UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| RAYMOND AND JEAN BUSBEE,<br>JOYCE BECKER, EDWARD DICK,<br>THOMAS THIEL, NELSON WILLIAMS,<br>ROB SMULIAN, JOHN SMULIAN,<br>ROBIN O. KOTTMAN DYNASTY TRUST,<br>OBERDORFER FAMILY INVESTMENTS I, LLLP,<br>OBERDORFER FAMILY INVESTMENTS II, LLLP,<br><br>Plaintiffs,<br><br>v.<br><br>IRON MOUNTAIN PARK, LLC,<br>IRON MOUNTAIN RESORT, LLC<br>DAWSONVILLE HOLDINGS EN, LLC,<br>DAWSONVILLE HOLDINGS BR, LLC<br>CRAIG A. STANSBERRY,<br><br>Defendants. | CIVIL ACTION FILE<br>NO. _______________ |

**COMPLAINT FOR DAMAGES**

COME NOW, Plaintiffs, Raymond and Jean Busbee, Joyce Becker, Edward Dick, Thomas Thiel, Nelson Williams, Rob Smulian, John Smulian, the Robin O. Kottman Dynasty Trust, Oberdorfer Family Investments I, LLLP, and Oberdorfer Family Investments II, LLLP, through counsel and file this Complaint against Iron Mountain Park, LLC, Iron Mountain Resort, LLC, Dawsonville Holdings EN, LLC, Dawsonville Holdings BR, LLC, and Craig A. Stansberry with this Court as follows:

(1)

This action is brought pursuant to the Clean Water Act, 33 U.S.C. § 1251 *et seq*. Thus, this Court has subject matter jurisdiction over this action under the provisions of § 505 of the Federal Water Pollution Control Act Amendment of 1972 (hereinafter the "Clean Water Act" or "CWA"), 33 U.S.C. § 1365(a)(1), and pursuant to 28 U.S.C. § 1331 (federal question).

(2)

Venue and jurisdiction in this case are based upon a federal question and are not based upon diversity.

(3)

This Court also has subject matter jurisdiction over pendant state statutory and common law claims pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction).

(4)

The CWA claims in this action are brought by Plaintiffs as private attorneys general for past and ongoing violations of the CWA. Under the CWA, Plaintiffs seek civil penalties, injunctive relief, attorneys' fees, and costs and expenses of litigation. Plaintiffs also assert pendant state law and common law claims arising from the same actions and/or omissions giving rise to the federal claims seeking compensatory damages, special damages, punitive damages, injunctive relief,

attorneys' fees, and costs and expenses of litigation as well as any other relief this Court deems just and equitable.

(5)

There are no pending actions that defeat this Court's subject matter jurisdiction.

(6)

A substantial part of the alleged events or omissions giving rise to Plaintiffs' claims occurred and continue to occur in Lumpkin County, Georgia within the Northern District of Georgia, Gainesville Division. Venue lies in this District because the claims arose in this District, as provided by 28 U.S.C. § 1391, and because the discharges occurred and continue to occur in this District pursuant to CWA, 33 U.S.C. § 1365(c)(1).

(7)

Pursuant to Section 505 of the CWA, 33 U.S.C. § 1365(b), Plaintiffs have provided Defendants with the requisite pre-complaint notification. Specifically, on or about February 17, 2026, Plaintiffs mailed to Defendants the required Notice of Intent to Sue letter ("Notice Letter"), pursuant to CWA § 505, 33 U.S.C. § 1365(b), and provided a copy of the Notice Letter to, *inter alia*, the Administrator and the Regional Administrator of United States Environmental Protection Agency, the Director of the Georgia Environmental Protection Division, and the Registered

Agents for Iron Mountain Park, LLC, Iron Mountain Resort, LLC, Dawsonville Holdings EN, LLC, Dawsonville Holdings BR, LLC, Craig Stansberry, the Lumpkin County Board of Commissioners, the United States Fish and Wildlife Service, and the United States Army Corps of Engineers.

(8)

Defendants received the Notice Letter as evidenced by the return postage receipt. True and correct copies of the Notice Letter and return receipts are attached hereto and incorporated herein in their entirety by reference. *See* Exhibit A attached hereto and incorporated herein by reference. The purpose of providing Defendants with notice of Plaintiffs' intent to file suit was to provide Defendants an opportunity to come into compliance without the need for litigation.

(9)

To date, Defendants have refused and failed to cease the CWA violations and remedy the damage described herein as well as abate the nuisances and trespasses or otherwise correct the problems within the 60-day period.

## **PARTIES**

(10)

Plaintiffs are all citizens of Georgia and own properties on historic impoundments of Mill Creek and Hurricane Creek, known as Lake 25 (a/k/a "Crane

Lake") and Lake 26, which discharge directly into the Etowah River by unbroken surface flow.

(11)

Plaintiffs Raymond and Jean Busbee are citizens of Lumpkin County, Georgia, who own property at 137 Sweetwater Bluff, Dahlonega, Georgia.

(12)

Plaintiff Joyce Becker is a citizen of Lumpkin County, Georgia, who owns property at 169 Perennial Lane, Dawsonville, Georgia.

(13)

Plaintiff Edward Dick is a citizen of Lumpkin County, Georgia, who owns property at 856 Rock Chimney Lane, Dahlonega, Georgia.

(14)

Plaintiff Thomas Thiel is a citizen of Lumpkin County, Georgia, who owns property at 760 Rock Chimney Lane, Dahlonega, Georgia.

(15)

Plaintiff Nelson Williams a citizen of Lumpkin County, Georgia, who owns property at 185 Sweetwater Bluff, Dahlonega, Georgia.

(16)

Plaintiff Rob Smulian is a citizen of DeKalb County, Georgia, who owns properties on Windy Oaks Road, Dahlonega, Georgia.

(17)

Plaintiff John Smulian is a citizen of DeKalb County, Georgia, who owns properties on Windy Oaks Road, Dahlonega, Georgia.

(18)

Plaintiff Robin O. Kottman Dynasty Trust is a Georgia Trust that owns property at 120 Windy Oaks Road, Dahlonega, Georgia.

(19)

Plaintiff Oberdorfer Family Investments I, LLLP, is a Georgia Limited Liability Limited Partnership that owns property at 4398 Dawsonville Highway, Dahlonega, Georgia.

(20)

Plaintiff Oberdorfer Family Investments II, LLLP is a Georgia Limited Liability Limited Partnership that owns property at 120 Windy Oaks Road, Dahlonega, Georgia.

(21)

Defendant Iron Mountain Park, LLC is a Georgia Limited Liability Company with its principal place of business at 116 Iron Mountain Parkway, Dahlonega, Georgia 30533.

(22)

Defendant Iron Mountain Park, LLC, can be served through its registered agent, Craig A. Stansberry, at 116 Iron Mountain Parkway, Dahlonega, Georgia 30533.

(23)

Defendant Iron Mountain Resort, LLC is a Georgia Limited Liability Company with its principal place of business at 116 Iron Mountain Parkway, Dahlonega, Georgia 30533.

(24)

Defendant Iron Mountain Resort, LLC, can be served through its registered agent, Craig A. Stansberry, at 116 Iron Mountain Parkway, Dahlonega, Georgia 30533.

(25)

Defendant Craig A. Stansberry is a resident of Dawson County, Georgia, and may be served at his residence located at 329 Max Wehunt Road, Dawsonville, Georgia 30534.

(26)

Defendant Dawsonville Holdings EN, LLC is a Delaware Limited Liability Company with its principal place of business at 116 Iron Mountain Parkway, Dahlonega, Georgia 30533.

(27)

Defendant Dawsonville Holdings EN, LLC can be served through its registered agent, National Registered Agents, Inc., at 1209 Orange Street, Wilmington, Delaware 19801.

(28)

Defendant Dawsonville Holdings BR, LLC is a Delaware Limited Liability Company with its principal place of business at 116 Iron Mountain Parkway, Dahlonega, Georgia 30533.

(29)

Defendant Dawsonville Holdings BR, LLC can be served through its registered agent, National Registered Agents, Inc., at 1209 Orange Street, Wilmington, Delaware 19801.

(30)

Defendants Dawsonville Holdings EN, LLC and Dawsonville Holdings BR, LLC own certain real properties consisting of approximately 1,135 acres of land located in Dawson County, Georgia (Dawson County Tax Parcel 078 009) and approximately 3,164 acres of land located in Lumpkin County, Georgia (Lumpkin County Tax Parcel 009 001) (collectively the “Iron Mountain Park property”).

(31)

Defendants operate a business on the Iron Mountain Park property under the name Iron Mountain Park, as a 4,300-acre tract of land for off-highway vehicle recreational use.

(32)

Mill Creek and Hurricane Creek have a continuous, perpetual, unbroken surface flow to the Etowah River. Hurricane Creek is a designated Primary Trout Stream. Mill Creek is a designated Secondary Trout Stream. *See* map entitled Lumpkin County, Georgia Sustainable Trout Stream Areas attached hereto as Exhibit B and incorporated herein by reference. The Iron Mountain Park property boundary is identified on this map, which shows that these waters are located on the Iron Mountain Park property.

(33)

Iron Mountain Park bills itself as "Georgia's Premier Off-Road Park" with over 150 routes "for all machines and enthusiasts to enjoy." *See* https://ironmountainresort.com/ (August 6, 2026) screenshot attached hereto as Exhibit C, and incorporated herein by reference.

(34)

Iron Mountain Park has constructed miles of trails for its off-highway vehicle operations. While the Iron Mountain Park property is partially wooded and timber

has been historically harvested from the property, the property is now being utilized for commercial recreational purposes.

(35)

Iron Mountain Park operates continuously, every day of the year, according to its own website. "We are open daily for riding, side-by-side rentals, and camping!"

*See* https://ironmountainresort.com/ (August 6, 2026) screenshot attached hereto as Exhibit C.

(36)

Iron Mountain Park has discharged, and continues to discharge, sediment-laden stormwater and other pollutants into Hurricane Creek, Mill Creek, Lake 25, Lake 26, and the Etowah River, all waters of the United States, without a National Pollutant Discharge Elimination System (NPDES) permit, in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

(37)

The CWA defines "point source" as "any discernible, confined, and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure … from which pollutants are or may be discharged." *See* 33 U.S.C. § 1362(14). These discharges originate from land-disturbing activities associated with the construction and operation of Iron Mountain Park, including, but

not limited to, off-highway vehicle operation, trail construction, road building, and site grading that flow directly into Hurricane Creek, Mill Creek, Lake 25, Lake 26, and the Etowah River.

(38)

The operation of off-highway vehicles on the Iron Mountain Park property causes soil, sand, and sediment to enter water bodies that run into the Etowah River. Each point a trail crosses a stream that runs into a tributary of Hurricane Creek, Mill Creek, or any other body of water that flows into the Etowah River is a point source.

(39)

In August of 2024, employees of Lumpkin County visited the Iron Mountain Park property and observed where off-highway vehicles cross perennial streams that run directly into the Etowah River. Lumpkin County produced a map showing these exact locations. *See* Lumpkin County ATV Trails figure attached hereto as Exhibit D and incorporated herein by reference. These are the locations of the violations.

(40)

Below are photographs from Iron Mountain Park's website showing the activities taking place on the property.







(41)

On September 4, 2024, Lauren McDaniel and Jonathan Wells of the Georgia Environmental Protection Division ("EPD"), along with Jeff Smith and Rebecca Mincey of Lumpkin County, visited the area of inflow of Crane Lake (Lake 25). Violations of Ga. Comp. R. & Regs. 391-3-6.03(5)(c) were observed. *See* Trip Report attached hereto as Exhibit E and incorporated herein by reference. This is a specific standard and limitation that Iron Mountain Park is violating. The Trip Report documents various violations and recommends that "the property upstream [Iron Mountain Park] be investigated for potential water quality violations."

(42)

Despite conditions imposed by Lumpkin County's Special Land Use Approval (SLUA) and recommendations from the Georgia Mountains Regional Commission, Iron Mountain Park has failed to install and maintain adequate best management practices (BMPs) to control erosion and sedimentation, resulting in increased sediment loading to downstream waters, including Hurricane Creek, Mill Creek, Lake 25, Lake 26, and the Etowah River.

(43)

The discharge of dredged or fill material into waters of the United States, including lakes and streams on and downstream of the property, including Hurricane Creek, Mill Creek, Lake 25, Lake 26, and the Etowah River, has occurred without the required permit from the U.S. Army Corps of Engineers, in violation of Section 404 of the CWA, 33 U.S.C. § 1344. *See* Technical Memoranda dated January 19, 2025 prepared by Craig Zeller, Georgia Professional Engineer, attached hereto as Exhibit F-1 and F-2, respectively, and incorporated herein by reference. *See also*, Bathymetry and Sediment Reports dated April 2024 and May 2024, respectively, attached hereto as Exhibits G-1 and G-2 and incorporated herein by reference.

(44)

Iron Mountain Park's activities have also violated Georgia's Water Quality Control Act and associated regulations protecting designated trout waters, including

Hurricane Creek, Mill Creek, Lake 25, Lake 26, and the Etowah River, including the failure to maintain required vegetated buffers and prevent turbidity increases beyond regulatory limits.

## FEDERAL STATUTORY AND REGULATORY FRAMEWORK

(45)

In 1972, Congress passed the Clean Water Act "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." *See* 33 U.S.C. §1251(a). To achieve this objective, Section 301 of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of any "pollutant" into "waters of the United States" except in accordance with water quality standards promulgated and permits issued under other sections of the CWA.

(46)

Generally, the Clean Water Act prohibits the discharge of pollutants into jurisdictional waters without a properly issued and valid permit or in violation of the terms and conditions of a properly issued and valid permit. *See* CWA §§ 301, 402 and 404; 33 U.S.C. §§ 1311, 1342 and 1344.

(47)

Section 402 of the CWA establishes the National Pollutant Discharge Elimination System ("NPDES") permit program, which prohibits the discharge of pollutants from a point source into waters of the United States without an NPDES

permit or in violation of an NPDES permit. *See* 33 U.S.C. § 1342. CWA Section 502(14) defines "point source" to include, *inter alia*, "any pipe … from which pollutants are or may be discharged." *See* 33 U.S.C. § 1362(14).

(48)

Georgia water quality standards require that "[a]ll waters shall be free from material related to municipal, industrial, or other discharges which produce turbidity, color, odor or other objectionable conditions which interfere with the designated use of the water body." Ga. Comp. R. & Regs. 391-3-6-.03(5)(c).

## General Allegations

(49)

Defendants' construction, maintenance, and operation of off-highway vehicle trails, roads, crossings, graded areas, drainage paths, and related facilities on the Iron Mountain Park property have altered, concentrated, accelerated, and increased the flow of stormwater, sediment, silt, mud, debris, fill material, and other pollutants from the Iron Mountain Park property into Hurricane Creek, Mill Creek, Lake 25, Lake 26, and downstream waters flowing to the Etowah River.

(50)

Defendants have failed to design, install, inspect, maintain, and repair adequate erosion-control, sediment-control, drainage, stabilization, buffer, and other best management practices necessary to prevent sediment-laden stormwater and

pollutants from leaving the Iron Mountain Park property and entering Plaintiffs' properties and waters.

(51)

Plaintiffs and public officials have notified Defendants of the sediment discharge, turbidity, siltation, water-quality impacts, and downstream property damage caused by Defendants' operations. Plaintiffs' February 17, 2026 Notice Letter provided written notice of the ongoing harmful conditions and demanded that Defendants cease, correct, and abate the unlawful discharges and resulting harm.

(52)

Despite notice and the opportunity to abate, Defendants have failed and refused to stop the sediment-laden discharges, correct the defective erosion and sediment controls, remediate the affected waters, or otherwise abate the continuing harmful conditions.

(53)

As a direct and proximate result, Plaintiffs have suffered property-specific harm, including turbidity, sediment accumulation, impairment of Lake 25 and Lake 26, interference with the use and enjoyment of their properties and waters, investigation and mitigation expenses, restoration and remediation costs, and diminution in value, in amounts to be proven at trial.

(54)

Prior to filing this lawsuit, Plaintiffs complained to Defendants about the unauthorized discharge of pollutants flowing into the Etowah River.

(55)

Prior to filing this lawsuit, Plaintiffs complained to Defendants that the discharges of pollutants are illegal and interfere with their rights.

(56)

Defendants failed or refused to conform their behavior and abate the discharges of pollutants described herein.

(57)

The pollutants discharged from Defendants' property substantially impair the Plaintiffs' use and enjoyment of the Etowah River watershed and interfere with their legitimate uses of their properties.

(58)

Plaintiffs have incurred substantial costs and have spent a considerable amount of time performing investigations into the facts of the discharge of pollutants into the Etowah River watershed as a direct result of Defendants' illegal discharges.

(59)

Defendants have failed or refused to abate Plaintiffs' losses, damage and injury caused by the discharges of pollutants into the Etowah River watershed.

(60)

At all times relevant hereto, Defendants were and are responsible for complying with all applicable federal, state, and local legal requirements concerning the discharge of pollutants to the Etowah River watershed.

(61)

At all times relevant hereto, it was foreseeable to Defendants that their discharge of pollutants into the waters running into the Etowah River watershed could harm the river and Plaintiffs.

(62)

The Etowah River and Plaintiffs' interests continue to be damaged by Defendants' discharges of pollutants.

(63)

Plaintiffs' remedies at law are inadequate to stop the continuing discharges by Defendants.

(64)

Plaintiffs continue to suffer irreparable injury as a result of the discharges of Defendants' pollutants into the Etowah River watershed.

## STANDARDS VIOLATED

(65)

Section 301(a) (prohibition of unpermitted discharges into waters of the United States including Hurricane Creek, Mill Creek, Lake 25, Lake 26, and the Etowah River), Section 404 of the Clean Water Act, 33 U.S.C. § 1344 (unauthorized fill), and related permit and buffer requirements under state law.

(66)

Ga. Comp. R. & Regs. 391-3-6.03(5)(c): "All waters shall be free from material related to municipal, industrial, or other discharges which produce turbidity, color, odor, or other objectionable conditions which interfere with the designated use of the water body."

(67)

Activity Constituting Violation: Land disturbance, grading, and operation of off-highway vehicle trails causing unpermitted discharges of sediment and fill to waters of the United States, including Hurricane Creek, Mill Creek, Lake 25, Lake 26, and the Etowah River.

(68)

Location: 116 Iron Mountain Parkway, Dahlonega, Georgia 30533, at each point where an off-highway vehicle crosses a stream leading into jurisdictional

waters, including Lake 25 (Parcel 011 008), Lake 26 (Windy Oaks Road), Hurricane Creek, Mill Creek, which run into the Etowah River.

(69)

Dates of Violation: Daily and ongoing since at least 2019, with documented sediment accumulation increases in 2023-2025. *See* Technical Memoranda dated January 19, 2025 prepared by Craig Zeller, Georgia Professional Engineer, Exhibits F-1 and F-2 attached hereto.

(70)

Iron Mountain Park operates year-round. *See* https://ironmountainresort.com/ (August 6, 2026) screenshot attached hereto as Exhibit H and incorporated herein by reference.

**COUNT ONE**
**VIOLATION OF THE CWA – UNPERMITTED DISCHARGES**

(71)

Plaintiffs reallege and incorporate Paragraphs 1 through 70 of their Complaint as if fully set forth herein in their entirety.

(72)

Section 301 of the Clean Water Act prohibits the discharge of pollutants into waters of the United States, except as otherwise expressly authorized by the Act. *See* 33 U.S.C. § 1311(a).

(73)

Section 505(a)(1) of the Clean Water Act authorizes citizens to commence a civil action against entities who are alleged to be in violation of a CWA effluent standard or limitation. *See* 33 U.S.C. § 1365(a)(1).

(74)

Effluent standards or limitations include a permit or condition thereof issued under Section 402 of the CWA. *See* 33 U.S.C. § 1365(f).

(75)

Section 402 of the Clean Water Act prohibits the discharge of pollutants from a point source into waters of the United States without a NPDES permit or in violation of an NPDES permit. *See* 33 U.S.C. § 1342.

## COUNT TWO
## VIOLATIONS OF THE CLEAN WATER ACT – GEORGIA WATER QUALITY STANDARDS

(76)

Plaintiffs reallege and incorporate Paragraphs 1 through 75 of their Complaint as if fully set forth herein in their entirety.

(77)

Georgia's state water quality standards require that "[a]ll waters shall be free from material related to municipal, industrial or other discharges which produce

turbidity, color, odor or other objectionable conditions which interfere with legitimate water uses." Ga. Comp. R. & Regs. 391-3-6-.03(5)(c).

(78)

Defendants' ongoing discharges of colored effluent from its facility interfere with fish propagation and with the health and viability of other wildlife, in violation of the Georgia water quality standards.

(79)

Defendants have failed to adequately monitor and report their violations of color discharges as required by law.

(80)

The aforementioned Defendants' complete and knowing disregard for the requirements of the CWA indicates that Defendants derive economic benefit from violating the law.

(81)

Defendants will continue these violations until it is no longer economically advantageous for them to do so.

(82)

In light of the foregoing, the CWA entitles the Plaintiffs to injunctive relief by an Order of this Court that requires Defendants to remove or otherwise remedy the discharges and damage to waters of the United States by, *inter alia*:

(A) enjoining any further violations of the CWA by the Defendants, including the discharge of pollutants into waters of the United States;

(B) ordering Defendants to immediately change practices and conditions at their facility so as to cease violations of the CWA and all applicable state laws;

(C) ordering Defendants to restore the physical, biological, and ecological integrity of the impacted jurisdictional waters;

(D) ordering that all impacted jurisdictional waters be restored and/or remediated; and

(E) ordering any further relief this Court finds just and equitable.

(83)

In light of the foregoing, the CWA also entitles Plaintiffs to judgment against the Defendants requiring Defendants to pay civil penalties for the CWA violations, in an amount not to exceed Sixty-Eight Thousand Four Hundred Forty-Six Dollars ($68,446.00) per day, per violation, injunctive relief as specified herein, and payment of Plaintiffs' litigation costs, including Plaintiffs' reasonable attorneys' fees, expert witness fees, and expenses.

## COUNT THREE
## INJUNCTIVE RELIEF

(84)

Plaintiffs reallege and incorporate Paragraphs 1 through 83 of their Complaint as if fully set forth herein in their entirety.

(85)

Plaintiffs seek a preliminary injunction seeking immediate injunctive relief necessary to prevent further irreparable harm to humans, the environment, wildlife, aquatic life, and habitat.

(86)

Plaintiffs are entitled, under this Court's powers of equity and the CWA, to a preliminary injunction requiring that Defendants:

(A) Cease the unpermitted discharge of pollutants from their facility;

(B) Immediately employ all necessary control technology to prevent continuing color discharges into the Etowah River; and

(C) Employ all other necessary temporary measures to prevent further damage to all adjacent and downstream jurisdictional waters.

(87)

Plaintiffs are entitled, under this Court's powers of equity and the CWA, to a permanent injunction:

(A) enjoining any further violations of the CWA by the Defendants, including the discharge of pollutants into waters of the United States in violation of federal and state laws and regulations;

(B) ordering Defendants to immediately change practices and conditions at their facility so as to cease violations of the CWA and all applicable state laws;

(C) ordering Defendants to restore the physical, biological, and ecological integrity of the impacted tributaries into and including the Etowah River;

(D) ordering that all future operations in the facility be carried out in strict compliance with all applicable laws; and

(E) ordering any further relief this Court finds just and equitable.

## COUNT FOUR
## NEGLIGENCE / NEGLIGENCE PER SE

(88)

Plaintiffs reallege and incorporate Paragraphs 1 through 87 of their Complaint as if fully set forth herein in their entirety.

(89)

Defendants owed Plaintiffs a duty to use ordinary care in constructing, operating, maintaining, and controlling the Iron Mountain Park property, including its trails, roads, stream crossings, drainage features, graded areas, and related

facilities, so as not to discharge sediment-laden stormwater, silt, mud, debris, fill material, and other pollutants onto Plaintiffs' properties and into waters affecting Plaintiffs' properties.

(90)

Defendants also owed duties imposed by Georgia law governing land-disturbing activity, stormwater discharge, erosion and sediment control, best management practices, stream buffers, and discharges to state waters, including the Georgia Erosion and Sedimentation Act and the Georgia Water Quality Control Act (and their implementing regulations), the Special Land Use Approval conditions governing the Iron Mountain Park property, applicable local ordinances, and the permits and water-quality standards applicable to the property, together with the duties imposed under the Clean Water Act and its implementing regulations. These duties were intended to protect downstream landowners, waters, lakes, streams, aquatic habitat, and lawful property uses from sediment, turbidity, erosion, pollution, and related damage.

(91)

Defendants breached those duties by, among other things, failing to design, install, inspect, maintain, and repair adequate erosion-control, sediment-control, stabilization, drainage, buffer, and best management practices; allowing off-highway vehicle traffic, trail construction, road building, grading, stream crossings,

and related operations to discharge sediment and pollutants from the Iron Mountain Park property; failing to correct known defective conditions after notice; and continuing operations despite known downstream harm.

(92)

Defendants' violations of applicable statutes, regulations, permits, water-quality standards, and legal duties constitute negligence *per se* or evidence of negligence under Georgia law. The injured Plaintiffs are within the class of persons who those duties were intended to protect, and the sediment, turbidity, siltation, property damage, loss of use, remediation expense, and other harm alleged herein are the type of harm those duties were intended to prevent.

(93)

Defendants' negligence and negligence *per se* were a direct and proximate cause of Plaintiffs' injuries and damages. Plaintiffs are entitled to recover compensatory damages, restoration and remediation costs, loss-of-use damages, diminution-in-value damages, and all other damages allowed by law.

## COUNT FIVE
## CONTINUING PRIVATE NUISANCE

(94)

Plaintiffs reallege and incorporate Paragraphs 1 through 93 of their Complaint as if fully set forth herein in their entirety.

(95)

Defendants' acts and omissions have created and maintained a continuing nuisance by causing hurt, inconvenience, and damage to Plaintiffs and their properties through recurring discharges of sediment-laden stormwater, silt, mud, debris, fill material, and pollutants from the Iron Mountain Park property into Plaintiffs' properties, lakes, streams, and waters.

(96)

The nuisance is continuing because the harmful condition recurs with rainfall, stormwater flow, continued trail and road use, continued off-highway vehicle activity, continued defective drainage and erosion controls, and Defendants' ongoing failure to abate the condition.

(97)

The nuisance is substantial and unreasonable. It affects ordinary, reasonable property owners by impairing the clarity, condition, use, enjoyment, ecological integrity, and value of Plaintiffs' properties, lakes, streams, and connected waters.

(98)

Defendants knew or should have known of the nuisance through Plaintiffs' complaints, the February 17, 2026 Notice Letter, public-agency observations, inspection reports, visible sedimentation and turbidity, and other facts showing

repeated downstream harm. Defendants nevertheless failed and refused to abate the nuisance.

(99)

Plaintiffs have suffered special, direct, and property-specific injuries from the nuisance, including siltation, turbidity, impaired use and enjoyment, investigation and remediation expenses, restoration costs, and diminution in value. Plaintiffs are entitled to damages, abatement, injunctive relief, and all other relief allowed by law.

## COUNT SIX
## CONTINUING TRESPASS

(100)

Plaintiffs reallege and incorporate Paragraphs 1 through 99 of their Complaint as if fully set forth herein in their entirety.

(101)

Defendants have caused and continue to cause physical invasions of Plaintiffs' properties and property-connected waters by sediment-laden stormwater, silt, mud, debris, fill material, and other pollutants discharged from the Iron Mountain Park property.

(102)

Each discharge, deposit, and physical invasion constitutes a trespass. The trespasses are continuing because Defendants' property conditions and operations

continue to send sediment-laden stormwater, silt, mud, debris, fill material, and pollutants onto and into Plaintiffs' properties, lakes, streams, and waters.

(103)

Defendants' trespasses were intentional because Defendants intentionally constructed, operated, maintained, and continued the conditions and activities that caused the invasions after notice of the resulting downstream harm.

(104)

As a direct and proximate result of Defendants' continuing trespasses, Plaintiffs have suffered property damage, loss of use and enjoyment, investigation and mitigation expenses, restoration and remediation costs, diminution in value, and other damages to be proven at trial.

## COUNT SEVEN
## PUBLIC NUISANCE CAUSING SPECIAL DAMAGE

(105)

Plaintiffs reallege and incorporate Paragraphs 1 through 104 of their Complaint as if fully set forth herein in their entirety.

(106)

Defendants' ongoing discharges of sediment-laden stormwater, silt, mud, debris, fill material, and pollutants into Hurricane Creek, Mill Creek, Lake 25, Lake 26, and connected waters flowing to the Etowah River constitute a public nuisance

to the extent they impair public waters, trout streams, aquatic habitat, water quality, and public environmental interests.

(107)

Plaintiffs have suffered special damages different in kind from those suffered by the general public. Plaintiffs own properties directly affected by Lake 25, Lake 26, Hurricane Creek, Mill Creek, and connected waters, and Defendants' discharges have caused property-specific siltation, turbidity, impaired use and enjoyment, investigation and remediation expenses, restoration costs, and diminution in value.

(108)

Because Defendants' public nuisance has caused special damage to Plaintiffs, Plaintiffs have a right of action for damages, abatement, injunctive relief, and all other relief allowed by law.

## COUNT EIGHT
## PUNITIVE DAMAGES AND EXPENSES

(109)

Plaintiffs reallege and incorporate Paragraphs 1 through 108 of their Complaint as if fully set forth herein in their entirety.

(110)

Defendants acted with willful misconduct, wantonness, and that entire want of care which raises the presumption of conscious indifference to consequences by continuing the complained-of operations, discharges, nuisance, and trespasses after

repeated notice of the downstream sedimentation, turbidity, property damage, and water-quality harm.

(111)

Plaintiffs are therefore entitled to punitive damages under O.C.G.A. § 51-12-5.1 in an amount sufficient to punish, penalize, and deter Defendants.

(112)

Defendants have acted in bad faith, have been stubbornly litigious, and have caused Plaintiffs unnecessary trouble and expense by refusing to abate known continuing discharges, nuisance, and trespasses after notice. Plaintiffs are therefore entitled to recover their expenses of litigation, including reasonable attorneys' fees, under O.C.G.A. § 13-6-11.

WHEREFORE, Plaintiffs respectfully request the following:

(a) service of process issue as authorized by law;

(b) this Court temporarily and permanently enjoin the Defendants from committing any further violations of the CWA or other applicable laws;

(c) this Court order Defendants to immediately change facility practices and conditions so as to cease all violations of the CWA, the Georgia Water Quality Control Act, and all applicable regulations;

(d) this Court order the Defendants to restore the physical, biological, and ecological integrity of the Etowah River watershed;

(e) this Court order specific remediation measures which must be undertaken to cease all violations and to restore the Etowah River watershed;

(f) this Court require the design and installation of adequate control technology to abate the continuing discharges of pollutants;

(g) this Court award Plaintiffs actual damages from the Defendants, as determined at trial;

(h) this Court, in issuing any final order in this action, order an award of litigation costs, including reasonable attorneys' fees and expert witness fees, to Plaintiffs pursuant to 33 U.S.C. § 1365(d);

(i) Award Plaintiffs compensatory damages, restoration and remediation costs, loss-of-use damages, diminution-in-value damages, investigation and mitigation expenses, and all other damages allowed by Georgia law;

(j) Temporarily and permanently enjoin Defendants from maintaining the nuisance and continuing trespasses alleged herein, and order Defendants to abate the nuisance, stop the sediment-laden discharges, implement effective erosion and sediment controls, restore affected waters and properties, and perform such remediation as the evidence and equity require;

(k) Award Plaintiffs punitive damages under O.C.G.A. § 51-12-5.1;

(l) Award Plaintiffs their expenses of litigation, including reasonable attorneys' fees, under O.C.G.A. § 13-6-11, in addition to any fees and costs recoverable under the Clean Water Act;

(m) that Plaintiffs be afforded their right to trial by jury; and

(n) that Plaintiffs have such other and further relief as this Court deems just and equitable.

Respectfully submitted August 14, 2026.

*/s/ Richard A. Wingate*
RICHARD A. WINGATE
State Bar of Georgia #770617
rwingate@hallmanwingate.com

For HALLMAN & WINGATE, LLC
Attorneys for Plaintiffs

166 Anderson Street, S.E., Suite 210
Marietta, Georgia 30060
(404) 588-2530

*/s/ Paul D. Menair*
PAUL D. MENAIR
State Bar of Georgia #502018
paul@leibel.com

For LAW OFFICE OF STEVEN LEIBEL PC
Attorneys for Plaintiffs

Folger House
3619 S. Chestatee
Dahlonega, Georgia 30533
(404) 892-0700